UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF NEW YORK
-----------------------------------------

STANLEY BREWER,

      Petitioner,

 -against-

ROBERT CUNNINGHAM, Superintendent,
Fishkill Correctional Facility,

      Respondent.
-----------------------------------------

13 Civ. 2873 (NSR)

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

NELSON S. ROMAN, United States District Judge:

Before the Court is a Report and Recommendation ("R & R")[1] issued by Magistrate Judge Paul E. Davison ("MJ Davison") on February 8, 2018, pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), recommending that the petition[2] of Stanley Brewer ("Petitioner"), by Writ of Habeas Corpus, challenging his convictions for ten counts of burglary in the second degree and two counts of criminal possession of stolen property in the fifth degree, be denied in its entirety.

Petitioner timely objected to the R & R. Petitioner primarily raises four objections: following a Mapp/Dunaway hearing, the trial court wrongfully denied his motion to suppress evidence; during his trial, the government proffered perjured testimony of law enforcement witness (prosecutorial misconduct); ineffective assistance of counsel; and judicial misconduct. For the following reasons, the Court adopts the legal analysis and conclusions of MJ Davison's R & R in its entirety. Accordingly, Petitioner's Writ of Habeas Corpus is DENIED and petition is DISMISSED.

## BACKGROUND

The Court presumes familiarity with the factual and procedural background of this case, the underlying criminal proceeding, and Petitioner's collateral state challenges.

---

[1] ECF No. 28, Magistrate Judge Paul E. Davison Report and Recommendation.
[2] See ECF No. 1, Petition Writ of Habeas Corpus.

1

Petitioner and his co-defendant, Eric Cruz ("Cruz"), were prosecuted by the Westchester County District Attorney's Office, in a twenty-four count indictment, for committing multiple residential burglaries in Westchester County from on or about December 14, 2005 through January 19, 2006. Petitioner and co-defendant Cruz purportedly targeted residential apartment buildings, picked the locks of the main front doors of the buildings and the apartment doors. Upon gaining entrance to an apartment, they jammed the lock to the door with a broken key or metal object. Although the various police departments involved did not initially know the identities of the individuals involved in the burglaries, they compiled surveillance videos and photos, and intelligence bulletins.

Petitioner was arrested on or about January 19, 2006, when White Plains Police Officer Josef Miedreich ("P.O. Miedreich") observed him and Cruz in the vicinity of North Broadway and Lake Street fitting the descriptions of the persons depicted in the burglary surveillance photos. The arrest location was also within close proximity to one of the burglaries. Petitioner and Cruz were wearing similar clothing to those depicted in the surveillance photos. After detaining Petitioner and Cruz, officers discovered they were in possession of a jewelry box, jewelry, currency and foreign currency, alleged proceeds of a burglary.

Petitioner was indicted on or about March 31, 2006 and charged with aiding, abetting and acting in concert with Cruz in twenty-three burglaries and related crimes. Petitioner sought to suppress evidence obtained at or about the time of his arrest. By decision issued by New York State Supreme Court Judge Robert DiBella ("Judge DiBella"), dated July 25, 2006, the matter was set down for, *inter alia*, a *Mapp/Dunaway* hearing. The *Mapp/Dunaway* hearing was conducted by Judge Lester Adler ("Judge Adler"). Approximately eight police officers testified at the hearing. Petitioner presented no evidence. Following the hearing, Judge Adler, in a written decision dated November 13, 2006, denied Petitioner's motion to suppress.

Judge Adler determined Petitioner was lawfully stopped upon P.O. Miedreich observing that Petitioner and Cruz matched the description of two individuals depicted in a photograph generated from surveillance videos in connection with the investigation of a burglary in the immediate area. P.O. Meidreich noted that as he drove his marked vehicle by the Petitioner and Cruz, they changed their direction three times and they continued to look over their shoulders in the direction of his marked patrol vehicle. Based upon the photographs and his observations of Petitioner and Cruz, P.O. Miedreich had at a minimum a common law right of inquiry. The situation slowly matured into probable cause to arrest upon the recovery of jewelry, currency and other items.

Soon after stopping the Petitioner and Cruz, P.O. Miedreich was joined by Detectives Kevin Donnelly ("Det. Donnelly") and Matthew Kittelstad, and Police Officers Michael Perry ("P.O. Perry") and Michael Gordon ("P.O. Gordon"). The officers similarly recognized the Petitioner and Cruz as fitting the description of the individuals depicted in several burglary related surveillance photographs. P.O. Perry asked Petitioner for identification. As Petitioner reached into his right rear pants pocket to retrieve his wallet, a watch fell to the ground. P.O. Perry not only noticed the watch on the ground but also noticed that Petitioner was wearing another watch on his wrist. With the consent of the Petitioner, P.O. Perry searched and discovered several items from Petitioner's person, including three watches, cameras, a Tiffany green bag, and a black bag containing coins.

As P.O. Perry spoke to Petitioner, P.O. Gordon spoke to Cruz. Cruz stated he was in the area looking for an apartment but did not have any pre-arranged appointments, was knocking on doors to see if apartments were available, and incorrectly identified Petitioner as his brother. Upon searching Cruz, officers recovered a green jewelry box and a large sum of foreign currency. While the officers were talking to the Petitioner and Cruz, Keith Lawson ("Lawson"), the superintendent of a nearby Lake Street apartment building, identified Petitioner and Cruz as two individuals who were inside his

3

apartment building. Petitioner and Cruz were not known to be residents of the building. The identification by Lawson was deemed witness initiated and not subject to police suggestiveness.

Petitioner and Cruz were placed in custody and taken to the White Plains Police Department headquarters ("WP Headquarters"). At WP Headquarters, Detective Brian Hembury ("Det. Hembury") met with Cruz. After being read *Miranda* warnings and acknowledging his rights,[3] Cruz admitted to participating in a burglary in the White Plains area. Det. Hembury aslo met with Petitioner and read him *Miranda* warnings. In response, Petitioner informed he did not want to make a statement until such time as he was given an opportunity to first speak with Cruz.

From the moment Petitioner and Cruz were detained and transported to WP Headquarters, police departments in the adjoining areas were being notified and asked to search their records for prior reports of burglaries, and to try to find witnesses to those burglaries. In addition, search warrants were in the process of being worked on and drafted. Detective Vincent Tilson ("Det. Tilson"), of the Yonkers Police Department, went to the WP Headquarters where he meet Petitioner and Cruz. Det. Tilson recognized them as two individuals involved in a Yonkers burglary as seen on a surveillance video. Detective Christopher Deering ("Det. Deering"), of the Yonkers Police Department, also identified Petitioner and Cruz as individuals involved in a Yonkers burglary from photographs he obtained and observed from surveillance cameras. Thereafter, Det. Deering obtained a search warrant for Cruz's home. Det. Deering obtained several items, including a safe, from Cruz's home. As Det. Deering was carrying the safe past Petitioner and Cruz, he overheard Petitioner tell Cruz, "they got the safe." Petitioner's statement, "they got the safe," was deemed a spontaneous statement and not the result of custodial interrogation.

---

[3] Cruz signed a card wherein he acknowledged receiving and understanding his *Miranda* warnings.

4

After Petitioner was detained on January 19, 2006, several police officers conducted multiple photo arrays wherein Petitioner was identified by civilian witnesses as an individual seen at or near the scene of a burglary. While Petitioner argued that the identification procedures were impermissible, the court determined they were not unduly suggestive. The court noted the arrays consisted of photographs of individuals similar in age and general appearance of the Petitioner. The Court also found the officers who conducted the photo array identifications acted reasonably and proper. There was no evidence to suggest the procedures were improperly conducted or unduly suggestive.

Regarding statements made by Petitioner to police, the court determined statements made by Petitioner to P.O. Miedreich during his investigatory inquiry did not constitute custodial interrogation and not subject to suppression.[4] The statement made by both Petitioner and Cruz while in the holding cell regarding the safe was not prompted by police inquiry or by an act designed to elicit a remark nor a response. The statement was therefore not subject to suppression. The Court also determined that Petitioner's statement to Det. Hembury, while at WP Headquarters, that his name was Sedrick Watson and that he did not want to make a statement or speak to the police until he was given an opportunity to first speak to Cruz, was made voluntarily, knowingly and intelligently after being appraised of and waiving his right against self-incrimination, and his right to counsel.

Petitioner and co-defendant Cruz were tried before a jury in New York State Supreme Court, Westchester County. The trial was conducted over the course of several days. Among the residential premises burglarized were: 30 Windsor Terrace, White Plains, NY; 1 Georgia Avenue, Bronxville, NY; 411 Bronx River Road, Yonkers, NY; 541 Pelham Road, New Rochelle, NY; 279 North Broadway, Yonkers, NY; 25 Sunnyside Drive, Yonkers, NY; 525 Bronxville Road, Yonkers, NY: 632 Palmer Road, Yonkers, NY; and 15 Lake Street, White Plains, NY.

---

[4] Petitioner stated to P.O. Miedreich that he and Cruz were from the Bronx and were lost. The statement contradicted what Cruz told police.

5

The prosecution presented in excess of twelve witnesses, video surveillance footage and photos, and physical evidence concerning approximately nine burglaries in and about Westchester County. The eyewitnesses included individuals who placed the Petitioner and /or Cruz at or in the immediate vicinity of the burglary sites. Along with physical evidence recovered from Petitioner and co-defendant, evidence related to the burglaries was recovered pursuant to a search warrant from Cruz's apartment. Although Petitioner and Cruz were charged with twenty-four burglary counts, at the conclusion of the trial only ten burglary counts were submitted to the jury. After deliberating, Petitioner and Cruz were convicted of ten counts of Burglary in the Second Degree and two counts of Criminal Possession of Stolen Property in the Fifth Degree.[5]

Petitioner and co-defendant appealed their convictions to the New York State Supreme Court, Appellate Division, Second Judicial Department ("Appellate Division"). In an opinion, dated May 18, 2012, their appeal was denied. Petitioner and co-defendant sought leave to appeal to the New York State Court of Appeals, the state's highest court.[6] Leave to appeal was denied on September 17, 2010.

In his petition, Petitioner raises many of the same issues and similar arguments asserted in his post-conviction motions and in his counseled brief to the Appellate Division. Petitioner sough to vacate his conviction on the basis that: (1) the trial court erred by finding probable cause because the court's ruling was inconsistent with *Mapp v. Ohio* and thus all evidence was obtained in violation of the Fourth Amendment; (2) the trial court erred by allowing the prosecution to introduce at trial false evidence,

---

[5] Following their conviction , Petitioner and co-defendant filed motions to vacate their conviction pursuant to NYS C.P.L §§ 330 and 440 on the grounds of, *inter alia*, the judgment was obtained by duress, misrepresentation and or fraud by the prosecution, false evidence was presented at trial, new evidence was discovered post-trial which could not have obtained through due diligence prior to trial, the convictions were obtained in violation of defendants constitutional rights, prosecutorial misconduct and ineffective assistance of counsel. Petitioner and co-defendant's post-trial motions seeking to vacate their convictions were denied. See, State Trial Court Record.

[6] On Direct Appeal, Petitioner argued that the trial court erred by not suppressing the physical evidence recovered from the warrantless arrest and the subsequent searches; the trial court erred by allowing Cruz's attorney to represent Cruz despite the existence of an alleged conflict of interest; and, the prosecutor's closing argument improperly bolstered the credibility of police and improperly served as direct testimony. Each of Petitioner's contentions were denied. See State Court Appellate Record.

perjured testimony, and illegally obtained evidence from the Petitioner's person; (3) the trial court erred by allowing the prosecution to suppress exculpatory information; and (4) petitioner was deprived of effective assistance of counsel "by proxy" because of his co-defendant's counsel's conflict of interest.[7] *(See* Petitioner's Memorandum of Law). Many of the arguments raised were previously rejected by the trial and the appellate courts.

On February 8, 2018, MJ Davison issued an R & R recommending that this Court deny the petition for a Writ of Habeas Corpus. MJ Davison found: the lower court's finding of probable cause was consistent with *Mapp v. Ohio* and established federal law; allegations of prosecutorial misconduct were unsupported and thus meritless, not properly exhausted and procedurally barred; and Petitioner's claim of ineffective assistance of counsel was meritless, procedurally barred under state law and deemed exhausted. On February 28, 2018, Petitioner filed timely objections to the R & R.

## STANDARD OF REVIEW

A magistrate judge may "hear a pretrial matter dispositive of a claim or defense" if so designated by a district court. See Fed. R. Civ. P. 72(b)(1); accord 28 U.S.C. § 636(b)(1)(B). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); accord 28 U.S.C. § 636(b)(1). Where a magistrate judge issues a report and recommendation, the following statute applies:

> [w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); accord Fed. R. Civ. P. 72(b)(2), (3). However, "[t]o accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need

---

[7] Petitioner claims that counsel for co-defendant Cruz also represented an individual, Jorge Guzman, in another criminal action, who was accused of committing similar burglaries in the Bronx and Westchester County. Petitioner asserts that counsel's dual representation of Cruz and Jorge Guzman constituted a conflict in Petitioner's case.

only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); accord *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.") (quoting *Small v. Sec. of HHS*, 892 F.2d 15, 16 (2d Cir. 1989)); see also Fed. R. Civ. P. 72 advisory committee note (1983 Addition, Subdivision (b)) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

To the extent a party makes specific objections to an R & R, those objections must be reviewed *de novo*. 28 U.S.C. 636(b)(l); Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). In *de novo* review, a district court must consider the "[r]eport, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Diaz v. Girdich*, No. 04-cv-5061, 2007 U.S. Dist. LEXIS 4592, at *2 (S.D.N.Y. Jan. 23, 2007) (internal quotation marks omitted). But to the extent "a petition makes only general and conclusory objections . . . or simply reiterates the original arguments, the district court will review the report and recommendations strictly for clear error." *Harris v. Burge*, No. 04-cv-5066, 2008 U.S. Dist. LEXIS 22981, at *18 (S.D.N.Y. Mar. 25, 2008). The distinction turns on whether a litigant's claims are "clearly aimed at particular findings in the magistrate's proposal" or are a means to take a "'second bite at the apple' by simply relitigating a prior argument." *Singleton v. Davis*, No. 03-cv-1446, 2007 U.S. Dist. LEXIS 3958, at *2 (S.D.N.Y. Jan. 18, 2007) (citation omitted).

## DISCUSSION

In his objection to the R & R, Petitioner merely attempts to rehash the same contentions raised in his petition and previously before the appellate state courts. Petitioner makes general and conclusory objections without indicating which determinations of MJ Davison were erroneous or not

supported in law. Thus, based upon a review for clear error, the Court finds no clear error and adopts the findings and conclusions contained within the R & R.

To the extent Petitioner makes specific objections to the R & R, the Court undertakes *de novo* review.

**Probable Cause**

Petitioner contends that the trial court erred by finding probable cause because it was inconsistent with *Mapp v. Ohio* and thus all evidence was obtained in violation of the Fourth Amendment. *(See* MJ Davison R & R at 15.) The Second Circuit has held:

> [F]ourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.

*Gates v. Henderson,* 568 F.2d 830 (2d Cir. 1977). New York provides adequate procedures to redress Fourth Amendment violations; therefore, Petitioner's claims are reviewed only if he demonstrates that there was an "unconscionable breakdown" in corrective mechanisms. MJ Davison found that Petitioner utilized New York's procedure for litigating Fourth Amendment claims and took advantage of multiple forums. *(See* MJ Davison R & R at 22-25.) Both the trial court and the Appellate Division fully considered and rejected Petitioner's probable cause claims. *(Id.)* MJ Davison found that there was no unconscionable breakdown in the corrective process, thus Petitioner is not entitled to federal review of his claim. Moreover, it is the Court's finding that the state courts' probable cause determinations were consistent with existing federal law.

**Prosecutorial Misconduct**

Petitioner contends that he is entitled to habeas relief because there was prosecutorial misconduct during his trial. *(See* MJ Davison R & R at 25.) Specifically, Petitioner contends that the prosecution used false evidence, perjured testimony, and illegally obtained evidence found on the

9

Petitioner. *(Id.)* Furthermore, the prosecution purportedly suppressed exculpatory information about the arrest of Jorge Guzman who was prosecuted for similarly-styled burglaries. *(Id.)*

It is well settled that a federal court may not grant habeas relief unless the petitioner has first exhausted his or her claims in state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1). A review of the record indicates Petitioner made similar claims of prosecutorial misconduct at the trial court level. The record further reflects that Petitioner did not allege prosecutorial misconduct on direct appeal to the intermediate appellate state court level. Thus, in accordance with *O'Sullivan*, the claim was not properly exhausted.

In the R & R, MJ Davison similarly found Petitioner's prosecutorial misconduct claims to be unexhausted and therefore barred from federal review.[8] *(Id.* at 25-35.) Furthermore, Petitioner's claim of prosecutorial misconduct is framed in conclusory fashion and no evidence has been proffered in support of the claim. Lastly, as MJ Davison found, the Petitioner did not allege any facts to support a motion to extend the time limit nor made any showing of cause or prejudice to overcome the procedural bar. *(Id.)* This Court adopts the legal analysis and conclusion of the R & R, and deems the claim meritless.

**Ineffective Assistance of Counsel**

Petitioner contends that he was deprived of effective assistance of counsel "by proxy" because of his co-defendant's counsel's perceived conflict of interest. *(Id.* at 35.) He alleges his trial counsel was ineffective because he was tried alongside co-defendant Cruz, whose counsel, Mr. Zappo, represented Jorge Guzman, a person accused of and prosecuted for committing similarly

---

[8] In circumstances where a petitioner fails to exhaust his claims in state court, but the state court would find those claims procedurally barred if petitioner were to subsequently pursue them, the claims are procedurally defaulted from federal habeas review. See *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); See also *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) ("For exhaustion purposes federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.") (internal quotations omitted). A procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., *Reyes*, 118 F.3d at 139.

styled burglaries. Petitioner further alleged that his defense was tainted because of an alleged "spillover effect."

Petitioner raised similar ineffective assistance of counsel claims before the state trial and appellate court. The Appellate Division held that Petitioner's arguments concerning an alleged conflict of interest and ineffective assistance of counsel are "based on matter dehors the record and, therefore, cannot be reviewed on direct appeal." *People v. Brewer*, 73 AD3d 1199 (2d Dept. 2010) citing *People v. Finch*, 279 A.D.2d 588 (2d Dept. 2001); *People v. Joseph*, 266 A.D.2d 237 (2d Dept. 1999). The claims were rejected as meritless by both courts.

In February 2011, Petitioner filed a subsequent motion entitled "Writ of Error Coram Nobis" wherein he sought to renew his motion for ineffective assistance of counsel claim. The trial court once again denied Petitioner's motion. The court determined, *inter alia*, the claim was raised untimely and therefore procedurally barred, and lacking in merit. *(Id.* at 35- 40.) Furthermore, MJ Davison found that Petitioner did not allege any facts to support a motion to extend the time limit nor made any showing of cause or prejudice to overcome the procedural bar. *(Id.)* This Court agrees.

## CONCLUSION

For the reasons stated above, the Court adopts MJ Davison's R & R analysis and conclusions of law in its entirety. The Petition for a Writ of Habeas Corpus is DENIED. The Court respectfully directs the Clerk of Court to enter Judgment consistent with the R & R (dismissing the petition), to mail a copy of this Order and subsequent judgment of dismissal to Petitioner at the last address listed on ECF, and to show proof of service on the docket.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray,* 413 F.3d 192, 195 (2d Cir. 2005); *Lozada v. United States,* 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez,* 129 F.3d 225, 259-60 (2d Cir. 1997). The Court certifies

pursuant to 18 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

Dated: December 20, 2018
    White Plains, New York

SO ORDERED,

_____
Nelson S. Román
United States District Judge, SDNY